1  CDF LABOR LAW LLP
   Dan M. Forman, State Bar No. 155811
2     dforman@cdflaborlaw.com
  707 Wilshire Boulevard, Suite 5150
3  Los Angeles, CA 90017
  Telephone:  (213) 612-6300
4
  Attorneys for Defendant
5  GRUMA CORPORATION dba MISSION FOODS

6

7

8             **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10

11  MIGUEL ANGEL SAMPERIO on
   behalf of himself and all others similarly
12  situated,

              Plaintiff,
13

14         vs.

  GRUMA CORPORATION dba
15  MISSION FOODS, a Nevada
  corporation; and DOES 1 through 50,
16  inclusive,

17            Defendants.

18  _____

Case No. _____

Removed From San Bernardino County
Superior Court, Case No.
CIVSB2205552

**DEFENDANT GRUMA
CORPORATION'S NOTICE OF
REMOVAL OF CIVIL ACTION**

Filed concurrently with:
1. Declaration of Horacio Gaitan

Action Filed:  April 11, 2022

19

20

21

22

23

24

25

26

27

28

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO PLAINTIFF MIGUEL ANGEL SAMPERIO AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Gruma Corporation ("Defendant" or "Gruma"), through its undersigned counsel, hereby removes the above-captioned action from the Superior Court of the State of California, County of San Bernardino, to the United States District Court for the Central District of California, based on the original jurisdiction of this Court under 28 U.S.C. § 1332(d), and removal jurisdiction under 28 U.S.C. § 1446. In support of this removal, Gruma states as follows:

## I. PLEADINGS, PROCESSES AND ORDERS

1. On or about April 11, 2022, Miguel Angel Samperio ("Plaintiff") commenced this action by filing an unverified Complaint in the Superior Court of California, County San Bernardino, captioned *Miguel Angel Samperio, on behalf of himself and all others similarly situated, Plaintiff,  vs. Gruma Corporation dba Mission Foods, a Nevada corporation; and DOES 1 through 50, inclusive, Defendants*, and bearing the case number CIVSB2205552 (the "Action"). A true and correct copy of the Summons and Complaint and related papers are attached as **Exhibit A**. Exhibit A constitutes all process, pleadings, and orders received by, served on, filed by, or served by Defendant in the Action, as required by 28 U.S.C. § 1446(a).

2. Plaintiff served the Summons and Complaint on Defendant on May 12, 2022.

## II. JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

3. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA" or the "Act"). *See* 28 U.S.C. § 1332(d), as this class action is between citizens of different states, it involves over 100 putative class members, and the amount in controversy for the putative class members in the aggregate exceeds $5,000,000, exclusive of interest and costs, as set forth more fully

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

1992971.2

1  below.

2  **III.  SATISFACTION OF PROCEDURAL REQUIREMENTS OF 28 U.S.C. §**

3  **1446**

4  **A.    Venue**

5      4.    In accordance with 28 U.S.C. section 1446(a), this Notice is filed in the

6  District Court of the United States in which the action is pending.  The Superior

7  Court of California, County of San Bernardino is located within the Central District

8  of California.  *See* 28 U.S.C. §§ 84(c).  Therefore, venue is proper in this Court

9  because it is the "district and division embracing the place where such action is

10 pending."  *See* 28 U.S.C. §1441(a).  Thus, this Court is the proper district court to

11 which this case may be removed.  *See* 28 U.S.C. §§ 1441(a) and 1446(a).

12 **B.    Timeliness**

13     5.    Plaintiff served the Complaint on Defendant on May 12, 2022.  This

14 Notice of Removal is thus timely filed.  *See* 28 U.S.C. § 1446(b); Fed. R. Civ. P.

15 6(a)(1)(C); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

16 344, 353-56 (1999) (removal period begins when defendant is formally served).

17 **C.    Service and Filing of Notice**

18     6.    In accordance with 28 U.S.C. section 1446(d), Defendant is serving a

19 copy of this Notice upon counsel for Plaintiff, and Defendant is filing copies of this

20 Notice with the Clerk of the Superior Court of California in the County of San

21 Bernardino and with the Clerk of the Central District of California.  Defendant will

22 promptly file true and correct copies of the Proof of Service regarding the Notice of

23 Removal to Plaintiff and the state court.

24        **IV.  THIS COURT HAS JURISDICTION UNDER CAFA**

25     7.    In relevant part, CAFA grants district courts original jurisdiction over

26 civil class actions filed under federal or state law in which any member of a class of

27 100 or more putative class members is a citizen of a state different from any

28 defendant and the amount in controversy for the putative class members in the

3

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

1  aggregate exceeds $5,000,000, exclusive of interest and costs.  The Act authorizes

2  removal of such actions pursuant to 28 U.S.C. § 1446.  As set forth below, this

3  Action meets all of the Act's requirements for removal and is timely and properly

4  removed by the filing of this Notice of Removal.

5  **A.    The Parties Are Completely Diverse**

6       8.    The Act's minimal diversity requirement is satisfied, *inter alia*, when

7  "any member of a class of plaintiffs is a citizen of a State different from any

8  defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b).  Minimal diversity of citizenship

9  exists here because Plaintiff and Defendant are citizens of different states.

10      9.    The Complaint alleges that Plaintiff is and has been a resident of the State

11 of California. (*See* Ex. A., Compl. ¶ 8.)  Allegations of residency in a state court

12 complaint can create a rebuttable presumption of domicile supporting diversity of

13 citizenship.  *See Lew v. Moss*, 797 F.2d 747, 750-51 (9th Cir. 1986*); see also State*

14 *Farm Mut.  Auto.  Ins.  Co.  v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation

15 by party in state court complaint of residency "created a presumption of continuing

16 residence in [state] and put the burden of coming forward with contrary evidence on

17 the party seeking to prove otherwise"); *Smith v. Simmons*, 2008 U.S.  Dist.  LEXIS

18 21162, *22 (E.D.  Cal.  2008) (place of residence provides "prima facie" case of

19 domicile).  For diversity purposes, a person is a "citizen" of the state in which he or

20 she is domiciled.  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th

21 Cir. 1983).  Residence is prima facie evidence of domicile.  *See State Farm Mutual*

22 *Auto Ins. Co. v. Dyer*, 19 F. 3d 514, 520 (10th Cir. 1994); *Golub v. Wells Fargo Bank,*

23 *N.A.*, 2014 WL 997336, at *1 (C.D. Cal. 2014).  Plaintiff's personnel documents show

24 that he listed a California address as his place of residence.  (Declaration of Horacio

25 Gaitan in Support of Defendant's Notice of Removal ("Gaitan Decl."), ¶ 7.)

26 Accordingly, Plaintiff is a citizen of the State of California for purposes of this

27 removal.

28      10.    Pursuant to 28 U.S.C. section 1332(c), "a corporation shall be deemed

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

1  to be a citizen of every State ... by which it has been incorporated and of the State ...

2  where it has its principal place of business."  In *Hertz Corp. v. Friend*, 559 U.S. 77

3  (2010), the United States Supreme Court established the proper test for determining a

4  corporation's principal place of business for purposes of diversity jurisdiction.  The

5  Supreme Court concluded that the "'principal place of business' is best read as

6  referring to the place where a corporation's officers direct, control, and coordinate

7  the corporation's activities."  *Id.* at 78.  The Court further clarified that the principal

8  place of business is the place where the corporation "maintains its headquarters –

9  provided that the headquarters is the actual center of direction, control, and

10 coordination." *Id.*

11       11.    Defendant, at the time of the filing of the Action, and since, has been

12 incorporated under the laws of the State of Nevada with its principal place of

13 business, and the location where its officers direct, control, and coordinate its

14 corporate activities, in Irving, Texas.  (*See* Gaitan Decl., ¶¶ 3 and 4.)  Plaintiff

15 identified Defendant in the Action as "a Nevada Corporation."  (Ex. A., Compl.

16 Caption and ¶ 9.)  Therefore, at all material times, Defendant has been a citizen of

17 the State of Nevada and the State of Texas, and not of the State of California, as it is

18 neither incorporated in California nor does it maintain its principal place of business

19 in California.

20       12.    Because Defendant is a citizen of the State of Nevada and the State of

21 Texas, and Plaintiff is a citizen of the State of California, complete diversity exists

22 pursuant to 28 U.S.C. §§1332(a).

23 **B.    Plaintiff's Action is Pled as a Class Action**

24       13.    Under CAFA, "'class action' means any civil action filed under Rule 23

25 of the Federal Rules of Civil Procedures or similar State statute or rule of judicial

26 procedure authorizing an action to be brought by one or more representative persons

27 as a class action." 28 U.S.C. § 1332(d)(1)(B).

28       14.    The Action has been styled as a class action, pursuant to California

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

1992971.2

1  Code of Civil Procedure section 382.  (Ex. A, Compl. Caption and ¶ 1.)  The

2  Complaint also contains an entire section devoted to "Class Action Allegations."

3  (Ex. A, Compl. ¶¶ 23-33.)  California Code of Civil Procedure section 382 authorizes

4  an action to be brought by one or more representative persons as a class action.  *See*

5  Cal. Code Civ. Proc. § 382.

6  **C.    There Are More Than 100 Putative Class Members**

7      15.    CAFA requires that the aggregated number of members of all proposed

8  classes in a complaint be at least 100.  *See* 28 U.S.C. § 1332(d)(5)(B).

9      16.    Here, the putative class is defined as: "All employees who are or were

10  employed by GRUMA CORP in the state of California as hourly non-exempt

11  employees within four (4) years prior to the date this lawsuit is filed ('liability

12  period') until the resolution of this lawsuit (collectively referred to as the 'Class

13  and/or Class Members')." [sic] (Ex. A, Compl. ¶ 23.)

14      17.    Plaintiff's Complaint also proposed the following Subclasses:

15  •   All Class Members employed by GRUMA CORP in the state of California as

16      hourly non-exempt employees and were not accurately and fully paid all

17      lawful wages owed to them including proper overtime and sick pay

18      compensation and/or minimum wages for all their hours worked;

19  •   All Class Members employed by GRUMA CORP in the state of California as

20      hourly non-exempt employees who, within the liability period, have not been

21      provided an uninterrupted 30-minute meal period when they worked over five

22      hours in a work shift and were not provided compensation in lieu thereof;

23  •   All Class Members employed by GRUMA CORP in the state of California as

24      hourly non-exempt employees who, within the liability period, have not been

25      provided an uninterrupted 30-minute meal period when they worked over ten

26      hours in a work shift and were not provided compensation in lieu thereof;

27  •   All Class Members employed by GRUMA CORP in the state of California as

28      hourly non-exempt employees who, within the liability period, have not been

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

1992971.2

provided a minimum ten (10) minute rest period for every four (4) hours or major fraction thereof worked per day and were not provided compensation in lieu thereof;

- All Class Members employed by GRUMA CORP in the state of California as hourly non-exempt employees who, within the liability period, were not correctly paid sick pay wages;

- All Class Members employed by GRUMA CORP in the state of California as hourly non-exempt employees who, within the liability period, were not provided with accurate and complete itemized wage statements;

- All Class Members employed by GRUMA CORP in the state of who, within the liability period, were not timely paid all wages due and owed to them during their employment with Defendant;

- All Class Members employed by GRUMA CORP in the state of California who, within the liability period, were not timely paid all wages due and owed to them upon the termination of their employment with Defendant.

(Ex. A, Compl. ¶ 24.a-h.)

- Plaintiff further seeks to represent a subclass for all non-exempt[1] employees of GRUMA CORP in the state of California who, within the liability period, did not receive full reimbursement for employee expenses ("Expense Reimbursement Class").

(Ex. A, Compl. ¶ 25.)

18.    As of April 11, 2022, Defendant employed 2,546 non-exempt employees in California.  (Gaitan Decl., ¶ 10.) During the period of April 11, 2018 to April 11, 2022, Defendant employed at least 5,135 non-exempt employees in

---

[1] While the Complaint does not state "non-exempt," as this is an alleged sub-class of the non-exempt putative class, these employees must be non-exempt.  *See* Compl., ¶¶ 23-25.

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

1    California, 2,589 of whom are no longer employed by Defendant.  (*Id.*)  Thus, the

2    requisite number of at least 100 putative Class members is satisfied.

3    **D.    Plaintiff's Claims Place More Than $5,000,000 In Controversy[2]**

4         19.    CAFA requires that the "aggregate[]" "matter in controversy exceed[]

5    the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. §

6    1332(d)(2) and (6).

7         20.    The removal statute requires that a defendant seeking to remove a case

8    to federal court must file a notice "containing a short and plain statement of the

9    grounds for removal." 28 U.S.C. § 1446(a).  Removal is proper if it is demonstrated

10    "by a preponderance of evidence, that the aggregate amount in controversy exceeds"

11    $5,000,000.  *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir.

12    2013).  This burden is not onerous and does not obligate a removing defendant to

13    "research, state, and prove the plaintiff's claims for damages."  *Korn v. Polo Ralph

14    Lauren Corp.*, 536 F.Supp.2d 1199, 1204-1205 (E.D. Cal. 2008).  Rather, "[t]he

15    'ultimate inquiry' is what amount is put 'in controversy' by the plaintiff's complaint,

16    not what a defendant will *actually* owe."  *Id.*  To determine the amount in

17    controversy for CAFA, all potential damages based on the claims in the complaint, as

18    well as attorneys' fees, are included.  *See Campbell v. Vitran Express, Inc.*, 471 Fed.

19    App'x 646, 648 (9th Cir. 2012) (to measure the amount in controversy, a court "must

20    assume that the allegations of the complaint are true and assume that a jury will

21    return a verdict for the plaintiff on all claims made in the complaint.") (quotations

22    and citations omitted).

23         21.    The amount in controversy is determined by accepting Plaintiff's

24    

25    [2] Defendant provides the following calculations only to demonstrate that the amount
26    in controversy exceeds $5,000,000.  Defendant makes no admission of liability or
      damages with respect to any aspect of this case, nor does Defendant waive its right to
27    ultimately contest the proper amount of damages due, if any, should Plaintiff prevail
28    with any of his claims.

allegations as true.  *See, e.g., Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 402 (9th Cir. 1996) ("[T]he amount in controversy is met by the express allegations of the plaintiff's complaint." (quotation omitted)); *Cain v. Harford Life & Accident Ins. Co*., 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("In measuring the amount in controversy, a court must assume that the allegations in the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.").  Thus, in measuring the amount in controversy, the Court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on *all claims* made in the complaint.  *Korn*, 536 F. Supp. 2d at 1205.

22.    A defendant may rely on reasonable assumptions in estimating the amount in controversy and need not submit evidence with a notice of removal.  *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[A] removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements.") (internal quotation marks omitted).  Here, however, Plaintiff failed to specify any sum for the value of all of the total claims alleged and remedies sought.  "When the amount is not facially apparent from the complaint, the court may consider facts in the removal petition . . . relevant to the amount in controversy at the time of removal."  *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *as amended on denial of reh'g and reh'g en banc* (Feb. 13, 2006).

23.    Further, courts may assume a 100% violation rate in calculating the amount in controversy for removal purposes when a more precise calculation is not apparent on the face of the complaint.  *See, e.g., Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate")*;*

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

1992971.2

*Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325FCDEFB, 2007 WL 1302504, at \*4 (E.D. Cal. May 1, 2007) ("Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought" to indicate a violation rate smaller than 100%).  Additionally, in establishing the amount in controversy, a removing party is entitled to make reasonable assumptions.  *See Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193 (9th Cir. 2015) ("[The removing party] bears the burden to show that its estimated amount in controversy relied on reasonable assumptions."); *see also Oda v. Gucci Am*., Inc., No. 2:14-cv-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at \*10 (C.D. Cal. 2015) ("Where, as here, a plaintiff makes generalized allegations regarding the frequency of violations, a defendant may calculate the amount in controversy based on reasonable assumptions.").  The United States Supreme Court, in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), confirmed that "as specified in §1446(a), a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." (Emphasis added.)

24.    Moreover, Congress intended that any uncertainty of the removability of an interstate class action be resolved in favor of federal jurisdiction.  *See* Senate Judiciary Committee Report, S. REP. 109-14, at 42 ("if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case").

25.    In sum, Defendant denies the validity and merits of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them.  By estimating the amount Plaintiff may recover if he prevails, however, Defendant does not concede that Plaintiff will prevail on any of his claims or that, if he prevails, he is entitled to damages, statutory

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

penalties, attorneys' fees or costs of suit in any particular amount or at all. Defendant reserves the full right to dispute Plaintiff's claims with respect to both liability, damages, penalties, and any amount of reasonable attorneys' fees or costs requested. Nevertheless, and notwithstanding Plaintiff's failure to allege the total amount of damages claimed, the amount in controversy as alleged by Plaintiff in this case exceeds $5,000,000, as set forth in more detail below.

### 1. <u>**Overtime Claims Put Over $4,328,270 in Controversy**</u>

26. Plaintiff's first cause of action alleges violation of California Labor Code § 510 for failure to pay overtime.

27. Plaintiff alleges that he and the putative class members were "spending time under Defendant's control 'off the clock' and not receiving compensation for all earned wages including overtime and double-time in violation of California state wage and hour laws." (Ex. A., Compl. ¶ 35.) Plaintiff alleges that he and Non-Exempt Employees worked off the clock "in excess of eight (8) hours in a workday and/or forty (40) hours in a workweek without receiving the proper compensation at the rate of time and one-half (1 ½) of such employee's regular rate of pay." (*Id.* ¶ 36.) Plaintiff also contends that he and Non-Exempt Employees worked "in excess of twelve (12) hours without receiving the proper compensation at the rate of double of such employee's correct regular rate of pay." (*Id.* ¶ 37.) Specifically, Plaintiff contends that he "regularly spent approximately fifteen to twenty (15-20) minutes to complete security and COVID-19 temperature checks before clocking in to begin work, time for which he was not compensated." (*Id.* at ¶ 14.) Plaintiff seeks to recover the alleged overtime compensation, and double-time compensation as well as interest, penalties, costs, and attorneys' fees, amongst other relief. (*Id.* ¶ 39, Prayer for Relief ¶¶ 1-7.)

28. During the period of April 11, 2018 to April 11, 2022, Defendant employed at least 5,135 putative class members. The putative class worked an aggregate of over 1,676,248 work shifts, approximately 48.65% of which, or

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

1992971.2

815,495, were shifts of more than eight hours during the bulk of this period. (Gaitan Decl., ¶ 10.) The employees worked in excess of 338,151 weekly pay periods. (*Id.*)The average regular rate of pay among this group of employees was approximately $17.54 during the bulk of this period. (*Id.*)

29. Although Defendant denies all liability, assuming conservatively the following for purposes of this analysis only that the putative class members were not paid for the equivalent of one hour of overtime for each week of their employment, reduced by percentage of shifts of more than 8 hours, the amount in controversy based on Plaintiff's overtime claim exceeds $4,328,270 (calculated as follows: $17.54 per hour x 1 hour/week x 1.5 overtime rate x 338,151 x .48.65) work shifts potentially subject to overtime hours). The potential recovery on Plaintiff's first cause of action, alone, comes close to CAFA's $5,000,000 threshold.

**2.    <u>Minimum Wage Claims Place at Least $2,259,476 in Controversy</u>**

30. Plaintiff's first cause of action also alleges violations of California Labor Code § 1194 for failure to pay minimum wages. (Ex. A., Compl. ¶ 38.) Plaintiff alleges that Defendant's "policies and/or practices resulted in Plaintiff and Non-Exempt Employees not receiving minimum wages for time spent working off the clock while subject to the control of Defendant all without pay.'" (*Id.*) As noted above, Plaintiff alleges that he "regularly spent approximately fifteen to twenty (15-20) minutes to complete security and COVID-19 temperature checks before clocking in to begin work, time for which he was not compensated." (*Id.* at ¶ 14.) Plaintiff seeks allegedly unpaid minimum wages, interest, costs, and attorneys' fees, amongst other relief. (*Id.* ¶ 39, Prayer for Relief ¶¶ 1-7.)

31. During the period of April 11, 2018 to April 11, 2022, Defendant employed at least 5,135 putative class members. The putative class worked an aggregate of over 1,676,248 work shifts, approximately 51.35% of which, or 860,753 were shifts less than eight (8) hours during the bulk of this period. (Gaitan Decl., ¶ 10.) The average regular rate of pay among this group of employees was

approximately $17.54 during the bulk of this period.  (*Id.*)  Based on Plaintiff's allegation that he was regularly uncompensated for fifteen to twenty (15-20) minutes spent completing security and COVID-19 temperature checks before clocking in to begin work, it is reasonable to assume that Plaintiff's claim involves 15-minutes of allegedly unpaid minimum wage.

32.    Although Defendant denies all liability, assuming for the purposes of this analysis only that Plaintiff and other putative class members were under Defendant's control and/or performing job duties for 15 minutes per shift, without compensation, each shift of their employment during which they were entitled to a compensation, from April 11, 2018 to the present, and further applying only the lowest applicable minimum wage rate of $10.50/per hour (the minimum wage in 2018), the amount in controversy is in excess of **$2,259,476** (calculated as follows: $10.50 per hour x 0.25 hour x 860,753 work shifts less than eight (8) hours).  As the minimum wage has increased, the amount in controversy on this claim is actually higher.

**3.    Meal and Rest Break Claims Place Over $43,566,986 in Controversy**

33.    Plaintiff's second and third causes of action alleges violation of California Labor Code §§ 226.7 and 512 for failure to provide compliant meal periods and rest breaks, and failure to pay the corresponding premiums.

34.    Plaintiff alleges that "due to the work load requirements and time constraints imposed by Defendant during each shift, Plaintiff and Class Members were required to work in excess of five (5) hours without a minimum, uninterrupted thirty (30) minute meal period and were not compensated one (1) hour of pay at their regular rate of compensation for each workday that a compliant meal period was not provided." (Ex. A., Compl. ¶ 15.)  Plaintiff contends that "due to the work load requirements and time constraints imposed by Defendant during each shift, Plaintiff and Class Members were required to work in excess of ten (10) hours without a

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

second minimum, uninterrupted thirty (30) minute meal period and were not
compensated one (1) hour of pay at their regular rate of compensation for each
workday that a compliant meal period was not provided." (*Id.* at ¶ 16.)  Plaintiff also
alleges that "due to the work load requirements and time constraints imposed by
Defendant, Plaintiff and Class Members were frequently required to work without
being permitted or authorized a minimum ten (1) minute rest period for every four
hours or major fraction thereof," and "not compensated one (1) hour of pay at their
regular rate of compensation for each workday that a rest period was not provided."
(*Id.* at ¶ 17.)  Plaintiff seeks, on behalf of himself and the Class, premium wages
pursuant to §§ 226.7 and 512.  (*Id.*, ¶¶ 45 and 49, and Prayer for Relief ¶ 4.)

35.    As noted above, during the relevant period, the putative class members
worked 1,676,248 work shifts, approximately 48.65% of which, or 815,495, were
shifts of more than eight hours and approximately 99.53% of which, or 1,668,370,
were shifts of more than three-and-a-half hours during the bulk of this period.
(Gaitan Decl., ¶ 10.)  The average regular rate of pay among this group of employees
is approximately $17.54 during the bulk of this period.  (*Id.*)  Based on Plaintiff's
allegations that all meal periods and rest breaks were non-compliant, it is reasonable
to assume that Plaintiff's claim involves unpaid meal period premiums for 815,495
work shifts, and unpaid rest break premiums for 1,668,370 work shifts.

36.    Although Defendant denies all liability, assuming for purposes of this
analysis only that putative class members were not provided a legally compliant meal
period during each shift of their employment that exceeded six hours, during the
applicable limitations period, the amount in controversy for alleged meal period
violations alone is $14,303,782 (calculated as follows: $17.54 per hour x 1 hour of
regular compensation as a penalty for each non-compliant meal period x 815,495
shifts).  Similarly, although Defendant denies all liability, the amount in controversy
for alleged rest period violations is $29,263,203 (calculated as follows: $17.54 per
hour x 1 hour of regular compensation as a penalty for each non-compliant rest

14

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

period x 1,668,370 shifts). Accordingly, there is "substantial, plausible evidence" that the amount in controversy in Plaintiff's second and third causes of action, alone, exceeds **$43,566,986** and thus meets CAFA's $5,000,000 threshold.

**4.    Claimed Waiting Time Penalties Add More Than $10,898,654 to the Amount in Controversy**

37.    Plaintiff's seventh cause of action alleges violation of California Labor Code §§ 201, 202, and 203 for failure to pay all wages due upon termination of employment. Plaintiff alleges that he "did not receive his final paycheck and was not compensated for waiting to receive his final paycheck." (Ex. A., Compl. ¶ 20.) Plaintiff also alleges that "more than 30 days have passed since Plaintiff and affected Class Members have left Defendants' [sic] employ, and on information and belief, have not received payment pursuant to Labor Code Labor Code § 203." (*Id.* at 68) Plaintiff seeks to recover "premium pay and penalties pursuant to Labor Code § 203." (*Id.*, Prayer for Relief ¶ 5.)

38.    During the period applicable to Plaintiff's waiting time penalties claim, April 11, 2018 to the present, approximately 2,589 putative class members separated from employment with Defendant in California. (Gaitan Decl., ¶ 10.) The average regular rate of pay among the putative class members is approximately $17.54 during the bulk of this period. (*Id.*)

39.    Although Defendant denies all liability, assuming for this analysis only that putative class members were not timely paid final wages due, the amount in controversy for his alleged Section 203 claim is at least **$10,898,654** (calculated as follows: $17.54 per hour x 8 hours x 30 days x 2,589 putative class members who no longer work for Defendant).

**5.    Paystub Claims Place at Least $3,636,000 in Controversy**

40.    Plaintiff's eighth cause of action alleges violation of California Labor Code § 226(a) for failure to provide accurate itemized wage statements. Plaintiff alleges that Defendant "failed to maintain accurate itemized records reflecting total

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

1992971.2

1  hours worked and [has] failed to provide Non Exempt Employees with accurate,

2  itemized wage statements reflecting total hours worked and appropriate rates of pay

3  for those hours worked." (Ex. A., Compl. ¶ 18.)  Plaintiff seeks to recover damages

4  "up to a maximum of $4,000.00 [for] each record-keeping violation." (*Id.* ¶ 73,

5  Prayer for Relief ¶¶ 6-7.)

6      41.    During each weekly pay period that occurred in the time period

7  applicable to the bulk of Plaintiff's wage statement claim, April 11, 2021 to October

8  29, 2021, Defendant employed an average of over 1,818 putative class members.

9  (Gaitan Decl., ¶ 11.)  California Labor Code Section 226(a) provides a maximum

10  aggregate statutory penalty of $4,000 per affected employee.  *See Korn v. Polo Ralph*

11  *Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("Where a statutory

12  maximum is specified, courts may consider the maximum statutory penalty available

13  in determining whether the jurisdictional amount in controversy requirement is

14  met.")

15      42.    Accordingly, although Defendant denies all liability, based on Plaintiff's

16  allegations and assuming for this analysis only that Defendant failed to provide 1,818

17  putative class members complete and accurate wage statements averaging $2,000 per

18  employee, the amount in controversy is at least **$3,636,000** (calculated as follows:

19  1,818 putative class members x $2,000).

20      **6.    Plaintiff's Claims Alone Satisfy CAFA's Amount in Controversy**

21      **Requirement**

22      43.    Based on the claims described above, the alleged class-wide liability by

23  itself greatly exceeds CAFA's $5,000,000 amount in controversy requirement.

24      **7.    Requested Attorneys' Fees Add to the Amount in Controversy**

25      44.    Plaintiff's Complaint also seeks an award of attorneys' fees. (Ex. A.,

26  Compl. ¶¶ 5, 39, 59, Prayer for Relief ¶ 6.)  Requests for attorneys' fees may be

27  taken into account in ascertaining the amount in controversy for purposes of removal.

28  *Longmire v. HMS Host U.S., Inc.*, Case No., 12-cv-2203, 2012 WL 5928485, at * 9

16

(S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over amount in controversy under CAFA.") (citing *Brady v. Mercedes-Benz USA, Inc.,* 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002)); *Muniz*, 2007 WL 1302504, at *4 (attorneys' fees appropriately included in determining amount in controversy).

45.    In the class action context, courts have found that a reasonable percentage of the aggregate amount in controversy is a benchmark for attorneys' fees awards under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See Campbell v. Vitran Exp., Inc*., 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists,* No. C-06-05778 JCS, 2011 WL 1230826, at *27-29 (N.D. Cal. Apr. 1, 2011); *Cicero v. Di-recTV, Inc*., No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010).

46.    Although Defendant denies all liability and disputes that Plaintiff is entitled to any attorneys' fees, if Plaintiff's fees are based on a highly conservative benchmark of 6% of the total amount in controversy, his claim for attorneys' fees independently surpasses CAFA's $5,000,000 threshold.

## V.   SATISFACTION OF ALL REMOVAL PREREQUISITES

47.    Defendant has sought no similar relief with respect to this matter.

48.    Written notice of the filing of the Notice of Removal will be given to the adverse party as required by law.  28 U.S.C. § 1446(d).

49.    A Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, will promptly be filed with the Clerk of the Superior Court of the State of California for the County of San Bernardino.

50.    The allegations of this Notice of Removal are true and correct, this cause is within the jurisdiction of the United States District Court for the Central District of California, and this cause is removable to the United States District Court for the

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

Central District of California.

## VI.  **ADOPTION AND RESERVATION OF DEFENSES**

51.    Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of any of the removing Defendant's right to assert any defense or affirmative matter, including but not limited to the following defenses: (1) lack of jurisdiction over the person; (2) improper venue; (3) insufficiency of process; (4) insufficiency of service of process; (5) improper joinder of claims and/or parties; (6) failure to state a claim; (7) the mandatory arbitrability of all of the claims; (8) class action waiver; (9) failure to join indispensable parties; (10) setoff; (11) statute of limitations bar; or (12) any pertinent defense under the California or Federal Rules of Civil Procedure, any state or federal statute, or otherwise.

## VII.  **CONCLUSION**

52.    Based on the foregoing, this Court has jurisdiction under 28 U.S.C. § 1332(d) and 28 U.S.C. § 1446.

53.    In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have the opportunity to more fully brief the basis for this removal, present oral argument, and/or order Plaintiff to file a statement of damages.

54.    WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of San Bernardino to the United States District Court for the Central District of California.

Dated:  June 10, 2022          CDF LABOR LAW LLP


By: _____/s/ Dan M. Forman_____
          Dan M. Forman
Attorneys for Defendant
GRUMA CORPORATION dba MISSION FOODS

18

DEFENDANT GRUMA CORPORATION'S
NOTICE OF REMOVAL OF CIVIL ACTION

1992971.2